**LOCHINVAR CORPORATION,**
**Appellant,**

**v.**

**Howard M. MEYERS, Appellee.**

No. 05–95–00657–CV.

Court of Appeals of Texas,
Dallas.

July 29, 1996.

L. Kent Clay, McDonald Clay & Crow, LLP, Fort Worth, for Appellant.

Mark L. Johansen, Crotty & Johansen, L.L.P., Michael Lowenberg, Akin Gump Strauss Hauer & Feld, L.L.P., Dallas, for Appellee.

1. The Honorable Bill J. Stephens, Justice, Court of Appeals, Fifth District of Texas at Dallas, Re-

Before LAGARDE, JAMES and STEPHENS[1], JJ.

JAMES, Justice.

Howard M. Meyers sued Lochinvar Corporation about a defective boiler manufactured by Lochinvar, claiming breach of warranties and deceptive trade practices. Following a two-day trial, the jury awarded damages and attorneys' fees to Meyers. In four points of error, Lochinvar complains that the trial court erred by: (1) submitting a charge that was modified after the jury had retired; (2) denying Lochinvar's motion for directed verdict based on limitations; (3) denying Lochinvar's motion for directed verdict based on lack of notice; and (4) awarding attorneys' fees to Meyers. In a single cross-point, Meyers complains the trial court erred by not awarding him appellate attorneys' fees. For the following reasons, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Meyers bought and renovated a house in Dallas. The renovation included work on the heating and air-conditioning systems. Meyers contracted with TD Service, Inc. to do the heating and air-conditioning work. Renovation of the heating system included replacement of the boilers. TD Service purchased two Lochinvar boilers from Ashcraft Company, Lochinvar's representative and distributor in Dallas. TD Service installed the Lochinvar boilers in March 1990.

In November 1990, Meyers and his family moved into the house. A Lochinvar representative came to the house and did an installation start-up on the boilers. Around Thanksgiving, the weather turned cold and Meyers used the heating system for the first time. One of the boilers made "disruptive and concerning" noises each time it fired. When Meyers went to the basement to check the boilers he noticed that the two boilers had different control panels and model years.

Meyers contacted TD Service about the noise and the two different boilers. TD Ser-

tired, sitting by assignment.

vice in turn contacted Ashcraft and Lochinvar. The control panels were different because one of the boilers was manufactured in 1988 and the other in 1989. Lochinvar replaced the control panel on the older model. Lochinvar believed the excessive noise was caused by inadequate venting. Lochinvar suggested increasing the draft in the venting system by either (1) extending the height of the flue duct, or (2) installing fans called draft inducers. TD Service installed draft inducers in the ventilation system. TD Service measured the draft in the system and determined that it was adequate. Lochinvar measured the draft and determined it was inadequate. The boiler continued to make the noise. TD Service offered to replace the boiler. Meyers refused because he felt it was Lochinvar's responsibility to replace the boiler, not TD Service's. Lochinvar refused to replace the boiler, claiming the noise was caused by inadequate venting, not a defect in the boiler.

On April 20, 1992, Meyers filed suit against Lochinvar for breach of its implied warranty of merchantability under the Texas Uniform Commercial Code (UCC). *See* TEX.BUS. & COM.CODE ANN. § 2.314 (Vernon 1994). On April 8, 1994, Meyers filed his third amended petition adding claims for (1) breach of implied warranty and (2) "laundry list violations" under the Texas Deceptive Trade Practices Act (DTPA). *See* TEX.BUS. & COM. CODE ANN. § 17.01–93 (Vernon 1987 & Supp. 1996). Following a two-day trial, the jury returned a verdict in favor of Meyers on his UCC and DTPA breach of warranty claims. The jury awarded damages and attorneys' fees for Meyers.

## JURY CHARGE

In point of error one, Lochinvar contends the trial court erred by submitting a charge that was modified after the charge had been read and argued to the jury.[2] Specifically, Lochinvar argues (1) Meyers waived his objections and any requested changes to the charge by not making them before the charge was read, and (2) the trial court violated rule 286 of the Texas Rules of Civil Procedure when it submitted the modified charge to the jury.

When read to the jury, Question 10 was prefaced with the following: "[i]f your answer to any part of Question 4 is 'Yes' then answer the following question; otherwise, do not answer it." After the court read the charge to the jury and the jury had retired to deliberate, the following discussion occurred:

> The Court: All right, after having read the Charge and having had final arguments, there appears to be an inadvertent error at

2. The court's charge in pertinent part, as read to the jury, was as follows:

> Question 1: Was the boiler (SN # J880612) manufactured by Lochinvar Corporation unfit for the ordinary purposes for which such boilers are used *because of a defect, and if so,* was such unfit condition a proximate cause of damage to Mr. Meyers?
> Question 2: Did the boiler (SN # J880612) manufactured and supplied by Lochinvar fail to be of fair average quality within the description of such boiler and was such failure a proximate cause of damage to Mr. Meyers?
> \* \* \* \* \* \*
> Question 4: Do you find that Lochinvar, with respect to its manufacture and sale of the boilers purchased by Mr. Meyers, made any of the following representations which were a producing cause of damages to Mr. Meyers?
> 1. that goods had sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they did not have?
> 2. that goods were original or new when they were deteriorated, reconditioned, reclaimed, used, or secondhand?

> 3. that goods were of a particular standard, quality, or grade, or that goods were of a particular style or model, if they were of another?
> \* \* \* \* \* \*
> Question 6: Was the boiler (SN # J880612) manufactured by Lochinvar Corporation unfit for the ordinary purposes for which such boilers are used because of a defect, and if so, was such unfit condition a producing cause of damage to Mr. Meyers?
> \* \* \* \* \* \*
> Question 8: Did the boiler (SN # J880612) manufactured and supplied by Lochinvar fail to be of fair average quality within the description of such boiler and was such failure a producing cause of damage to Mr. Meyers?
> \* \* \* \* \* \*
> Question 10: What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Howard M. Meyers for the following items of damages, if any, that resulted from such conduct?

the top of page 7, above Question 5 [sic]. It reads—right now it reads: "If you have answered any subpart of Question 4 'yes,' then answer the following question; otherwise, do not answer it."

It should read, and will be changed to read: "If your answer to Question 1 or 2 or any part of Question 4 is 'yes,' then answer the following question; otherwise, do not answer it." And that's at Mr. Johansen's suggestion. Mr. Clay, do you have any objection to that?

Mr. Clay: Yes, Your Honor, I do have an objection to it. The objection is changes are being made after closing arguments—arguments to the jury. The case was argued to the jury on the charge as it was originally drafted. Mr. Johansen [request to speak louder from the Court Reporter] counsel for Mr. Meyers, had an opportunity to object—objections he had to the charge, and advised the court that he had no changes or objections, and it's our position that he changed the charge.

The Court: Well, as I indicated to you, Mr. Clay, if you truly wish to reargue the case, I can give you some additional time to argue it, if you think there's—there's a need, because there has been a change.

\* \* \* \* \* \*

Mr. Johansen[3]: It would also be 6, Your Honor, and 7—6 and 8, too....

The Court: 1, 2, 4, 6, or 8?

Mr. Johansen[4]: Right. And again, that's what we contemplated in the conference.

\* \* \* \* \* \*

Mr. Clay: Your Honor, if the Court is going to make those changes, I would like to make an objection to the new proposed Question 10; I didn't have an opportunity to make before closing arguments.

And that is by predicating this damage question on issues 1 and 2, which were breach of warranty claims, and then also 6 and 8, which are warranty claims, that Question 10 includes cost of installation or replacement of boiler, which I believe is inappropriate to a breach of warranty claim, because those type damages are not recoverable on breach of warranty claims, under the UCC. The only damages that are recoverable are damaged property, and that's already covered in Subsection a.

So we would object to the inclusion of Subpart b, if you're going to predicate the question on Questions 1, 2, 6, or 8, in addition to the other one.

The Court: Well, in the first place, you're certainly entitled to make the objection since we made the change, even if you're right about the objection we can handle it post-verdict, since there are separate answer blanks for each of those elements. So I'm going to overrule your objection, and again ask you whether you want to reargue—

Mr. Clay: Your Honor—

The Court:—any portion of the case.

Mr. Clay:—I'm afraid that if I pull the Jury out again and only I argue, that it's going to prejudice me rather than clarifying things. So I've got to respectfully decline that offer, because I believe I'll be prejudiced in the eyes of the Jury when I do so.

The Court: All right. All right, Natalie, if you take that back to them, why don't you just tell each of them that I've made that change, and point that out to them, so they can make it on their own copies.

The trial court then made handwritten corrections to the instruction preceding Question 10. The corrected instruction allowed Question 10 to be predicated on affirmative answers to Questions 1, 2, 4, 6, and 8.

### Applicable Law

██ Rule 1 of the Texas Rules of Civil Procedure mandates that all rules of civil procedure be given a liberal construction to promote the just, fair, equitable and impartial adjudication of the rights of litigants. See TEX.R.CIV.P. 1. The Texas Rules of Civil Procedure have the same force and effect as

---

3. In the statement of facts the speaker is indicated as Mr. Clay; both parties agree that the speaker was Mr. Johansen, Meyers's counsel.

4. Again in the statement of facts the speaker is indicated as Mr. Clay; however, both parties agree the speaker was Mr. Johansen.

statutes. The court should liberally construe them to ensure a fair and equitable adjudication of the rights of the litigants without ignoring their plain meaning. *See Methodist Hosp. v. Corporate Communicators, Inc.,* 806 S.W.2d 879, 884 (Tex.App.—Dallas 1991, writ denied).

Rule 272 provides that, in every instance, on penalty of waiver, a party shall present to the court objections to the court's charge in writing, or dictated to the court reporter in the presence of the court and opposing counsel, outside of the jury's presence and before the court reads the charge to the jury. *See* TEX.R.CIV.P. 272; *Methodist Hosp.,* 806 S.W.2d at 884.

Rule 272 precludes the trial court from granting objections to its charge after it reads the charge to the jury. However, after the parties complete their jury argument and the jury retires, rule 286 allow a court the opportunity to correct an error by modifying its charge. *See* TEX.R.CIV.P. 286; *Missouri Pac. R.R. v. Cross,* 501 S.W.2d 868, 873 (Tex. 1973); *Methodist Hosp.,* 806 S.W.2d at 885. Rule 286 provides in pertinent part:

> After having retired, the jury may receive further instructions from the court touching any matter of law, either at their request or upon the court's own motion. For this purpose they shall appear before the judge in open court in a body.... The court shall give such an instruction in writing, but no instruction shall be given except in conformity with the rules relating to the charge. Additional argument may be allowed in the discretion of the court.

TEX.R.CIV.P. 286.

Violations of rule 286 require this Court to reverse only upon a showing of prejudice. *Stevens v. Travelers Ins. Co.,* 563 S.W.2d 223, 229 (Tex.1978); *Methodist Hosp.,* 806 S.W.2d at 885. A proper supplemental charge given orally rather than in writing is not harmful. *See Stevens,* 563 S.W.2d at 233.

### Application of Law to Facts

We agree with Lochinvar that Meyers, by failing to object to the charge prior to its being read to the jury, waived his objec-tions under rule 272. However, rule 286 allow a court the opportunity to correct an error by modifying its charge. Argument had been completed and the jury retired prior to the modification of the charge. The instruction was given to the jury in writing. Thus, the trial court followed the requirements of rule 286 except for its failure to reassemble the jury in the courtroom. Lochinvar did not object to the court's failure to reassemble the jury and read the modified charge.

In the absence of a specific objection, and in keeping with the liberal construction required by rule 1, we conclude the trial court substantially complied with rule 286. To conclude otherwise would be to elevate form over substance. Further, even assuming the court's actions were not sufficient to meet the requirements of rule 286, we conclude Lochinvar has failed to show how the court's failure to orally read the modification to the jury was harmful. The modification was straightforward. The corrected instruction simply allowed Question 10 to be predicated on affirmative answers to Questions 1, 2, 4, 6, and 8 rather than solely on Question 4. The trial court offered Lochinvar the opportunity to reargue the modified charge. Lochinvar declined to do so. We overrule point of error one.

### LIMITATIONS

In point of error two, Lochinvar contends the trial court erred by denying its motion for directed verdict because it conclusively established that Meyers's DTPA breach of implied warranty claims were barred by limitations. Specifically, Lochinvar argues the "discovery rule" portion of the DTPA statute of limitations does not apply to breach of implied warranty claims asserted under the DTPA. Without the benefit of the discovery rule, Lochinvar argues, Meyers did not assert his DTPA claims before the two-year statute of limitations had run.

### Standard of Review

An appeal from the denial of a motion for directed verdict is in essence a challenge to the legal sufficiency of the evidence. *Kershner v. State Bar of Tex.,* 879 S.W.2d

343, 346 (Tex.App.—Houston [14th Dist.] 1994, writ denied). We sustain challenges to the legal sufficiency of the evidence when: (1) there is a complete lack of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.,* 793 S.W.2d 660, 666 n. 9 (Tex.1990). Where an appellant attacks the legal sufficiency of a finding on an issue on which it had the burden of proof, it must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). We review a "matter of law" challenge by first examining the record for evidence that supports the finding, while ignoring all evidence to the contrary. If there is no evidence to support the finding, then we examine the entire record to determine if the contrary proposition is established as a matter of law. *Sterner,* 767 S.W.2d at 690.

### Applicable Law

■ Section 17.565 provides that all actions brought under the DTPA must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred, or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice. *See* TEX. BUS. & COM.CODE ANN. § 17.565 (Vernon 1987). The statute of limitations for an action brought under the DTPA is governed by section 17.565, not the statute dealing generally with the underlying cause of action brought under the DTPA. *McAdams v. Capitol Prod. Corp.,* 810 S.W.2d 290, 292–93 (Tex. App.—Fort Worth 1991, writ denied); *Brooks Fashion Stores, Inc. v. Northpark Nat'l Bank,* 689 S.W.2d 937, 943 (Tex.App.— Dallas 1985, no writ). Therefore, section 17.565 of the DTPA exclusively governs the limitations period applicable to DTPA suits, including breach of warranty actions brought under the DTPA. *McAdams,* 810 S.W.2d at

293; *Brooks Fashion Stores,* 689 S.W.2d at 943.

■ The discovery rule is statutorily included in section 17.565 of the DTPA. *See* TEX.BUS. & COM.CODE ANN. § 17.565 (Vernon 1987); *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990). The discovery rule is an exception to the general rule that a cause of action accrues when facts come into existence authorizing a claimant to seek a judicial remedy. *Robinson v. Weaver,* 550 S.W.2d 18, 19 (Tex.1977). Under the discovery rule, the statute of limitations does not begin to run until the claimant discovers or, in the exercise of reasonable diligence, should have discovered the facts establishing a cause of action. *Burns,* 786 S.W.2d at 267.

■ Under the "relation back doctrine," if an amended pleading asserts additional causes of action based upon the same transaction or occurrence that formed the basis of the claims made in the original pleading, then the amended pleading relates back to the original filing, and is not subject to a limitations defense. *Ex parte Goad,* 690 S.W.2d 894, 896 (Tex.1985); *Long v. State Farm Fire & Casualty Co.,* 828 S.W.2d 125, 128 (Tex.App.—Houston [1st Dist.] 1992, writ denied). The "relation back doctrine" applies to DTPA claims. *Long,* 828 S.W.2d at 128.

### Application of Law to Facts

■ Lochinvar contends that the limitations period for breach of implied warranty claims asserted under the DTPA cannot be extended by the discovery rule. Lochinvar relies on *Safeway Stores Inc. v. Certainteed Corp.,* 710 S.W.2d 544 (Tex.1986), to support its position. In *Safeway,* the supreme court determined that implied warranties do not explicitly extend to future performance under section 2.725(b) of the UCC, so that Safeway's cause of action for implied warranty accrued at the time of sale, not at the time of discovery. *Safeway,* 710 S.W.2d at 546–47. In section 2.725, the legislature adopted a uniform date of accrual and rejected the discovery rule except for warranties explicitly extending to future performance. *Safeway,* 710 S.W.2d at 546. Because implied

warranties do not extend to future performance, they do not fall within the narrow exception found in section 2.725(b). *See Safeway*, 710 S.W.2d at 547–48.

The statute of limitations of an action brought under the DTPA is governed by section 17.565, not by section 2.725 of the UCC, the statute dealing generally with the underlying cause of action. In section 17.565, unlike in section 2.725 of the UCC, the legislature chose to adopt the discovery rule for DTPA claims. Thus, we conclude *Safeway* is not applicable to breach of implied warranty claims under the DTPA.

■ Under the discovery rule, the statute of limitations does not begin to run until the claimant discovers or, in the exercise of reasonable diligence, should have discovered the facts establishing a cause of action. The jury determined that the earliest date that Meyers discovered or should have discovered the defect in the boiler was November 1990.

Meyers filed his original petition on April 20, 1992, within two years from when Meyers discovered or should have discovered the defect in the boiler. Meyers's DTPA breach of implied warranty claim was asserted in his third amended petition, filed on April 8, 1994. The DTPA claims were based on the same transaction or occurrence that formed the basis of the claims in the original petition. Therefore, Meyers's claim for violations of the DTPA relates back to his timely filed petition asserting breach of warranty claims under the UCC. Thus, it is not subject to Lochinvar's limitation defense. We overrule point of error two. Due to our disposition of points of error one and two, we need not address point of error four, alleging Meyers was not entitled to attorneys' fees because he did not prevail on his DTPA claims.

### NOTICE

In point of error three, Lochinvar contends the trial court erred by denying its motion for directed verdict because Meyers failed to submit any evidence of when notice was given, and it established as a matter of law that Meyers failed to timely notify it of any breach of implied warranty claims under the UCC.

### Standard of Review

■ An appeal from the denial of a motion for directed verdict is in essence a challenge to the legal sufficiency of the evidence. *Kershner*, 879 S.W.2d at 346. We sustain challenges to the legal sufficiency of the evidence when (1) there is a complete lack of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence established conclusively the opposite of a vital fact. *Juliette Fowler Homes*, 793 S.W.2d at 666 n. 9. When an appellant attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). We consider only the evidence and inferences that tend to support the finding. We disregard all evidence and inferences to the contrary. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992).

### Applicable Law

■ Where a tender has been accepted, section 2.607(c)(1) requires the buyer to notify the seller that a breach of warranty has occurred within a reasonable time after he discovers or should have discovered any breach. *See* TEX.BUS. & COM.CODE ANN. § 2.607 (Vernon 1994). The burden of alleging and proving proper notice is on Meyers, the buyer. *See* TEX.BUS. & COM.CODE ANN. § 2.607(c)(1) (Vernon 1994); *Miller v. Spencer*, 732 S.W.2d 758, 761 (Tex.App.—Dallas 1987, no writ). Failure to notify the seller of the breach, thereby allowing the seller an opportunity to cure, bars recovery on the basis of breach of warranty. *Miller*, 732 S.W.2d at 761. It is not essential that the buyer's notification of a defective product specifically set forth in detail every objection the buyer has to the fitness of the product; it is only necessary that the seller be informed that there is a claimed breach of the warranty of fitness. *Carroll Instrument Co. v. B.W.B. Controls Inc.*, 677 S.W.2d 654, 657

**190**

(Tex.App.—Houston [1st Dist.] 1984, no writ). A general expression of the buyer's dissatisfaction may be sufficient to comply with section 2.607. *See Melody Home Mfg. Co. v. Morrison,* 502 S.W.2d 196, 203 (Tex. Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.). Ordinarily, notice is a question of fact to be determined by the trier of fact. It becomes a question of law only where there is no room for ordinary minds to differ about the proper conclusion to be drawn from the evidence. *Carroll Instrument,* 677 S.W.2d at 657.

### Application of Law to Facts

■ Lochinvar contends that the record shows that Meyers never took any action to timely notify Lochinvar of the alleged breach after his discovery of the defect. Lochinvar contends the only evidence of notice contained in the record is as follows: (1) the DTPA demand letter dated December 14, 1992; (2) Meyers filed his lawsuit on April 20, 1992; and (3) Dan Sheko, Lochinvar's District Manager, testified he first received notice of Meyers's complaint around April or May 1991. Lochinvar argues that the notice received in April or May 1991 is untimely as a matter of law.

The record indicates the boiler was delivered to Meyers's home in March 1990. Meyers contacted TD Service immediately after he discovered the defect in the boiler, in November 1990. TD Service attempted to correct the problem, and in turn contacted Ashcraft and Lochinvar. Because TD Service was unable to correct the problem, Meyers contacted Lochinvar in April or May 1991. Meyers testified he had several conversations with Lochinvar's representatives concerning the excessive noise made by the boiler. Meyers tried on several occasions to speak directly with the president of Lochinvar. Meyers requested Lochinvar to replace the boiler and Lochinvar refused. Based on these facts, we decline to hold that the notice to Lochinvar was untimely as a matter of law. We conclude based on these facts, there is some evidence that Meyers notified Lochinvar of the breach of warranty within a reasonable time after he discovered or should have discovered the breach. We overrule point of error three.

### MEYERS'S ATTORNEYS' FEES

■ In a single cross-point, Meyers contends the trial court erred by not awarding him appellate attorneys' fees. Meyers argues that because he prevailed on his DTPA breach of implied warranty claim and his evidence of appellate attorneys' fees was uncontroverted, he established as a matter of law his entitlement to additional attorneys' fees. The record does not indicate that Meyers filed a motion for new trial or any other post-judgment motion bringing to the trial court's attention his complaint about attorneys' fees. In fact, Meyers's response to Lochinvar's motion for new trial contends that the jury's award of attorneys' fees was proper. Because Meyers did not give the trial court the opportunity to correct the alleged error that he raises for the first time on appeal, nothing was preserved for appellate review. *See* TEX.R.APP.P. 52(a); *Steves Sash & Door Co. v. Ceco Corp.,* 751 S.W.2d 473, 477 (Tex.1988); *McCraw v. Maris,* 837 S.W.2d 646, 652 (Tex.App.—Dallas 1990), *rev'd on other grounds,* 828 S.W.2d 756 (Tex. 1992). We overrule cross-point of error one.

Accordingly, we affirm the trial court's judgment.