NO. 12-10-00342-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

DOUBLE C CONTRACTING, INC.,          §                      APPEAL
FROM THE 392ND

APPELLANT/CROSS-APPELLEE,                                                           

 

V.                                                                    

                                                                        §                      JUDICIAL
DISTRICT COURT 

GBC HARBOUR LIGHTS MARINA,         

LTD. and HARBOUR LIGHTS

VILLAS PHASE ONE, LTD.,

APPELLEES/CROSS-APPELLANTS        §                      HENDERSON
COUNTY, TEXAS







MEMORANDUM
OPINION

            Double
C Contracting, Inc. sued GBC Harbour Lights Marina, Ltd., and Harbour Lights
Villas Phase One, Ltd., (collectively Harbour Lights) for breach of contract
and foreclosure of a mechanic’s and materialman’s lien.  The jury found that
Harbour Lights breached the contract, and the trial court rendered judgment
against Harbour Lights for $31,005.30, interest, and attorney’s fees.  The
trial court denied Double C’s request to foreclose its mechanic’s and
materialman’s lien.  Double C raises one issue challenging the trial court’s
denial of the foreclosure of its lien.  In two cross-issues, Harbour Lights
challenges the trial court’s denial of their motion for instructed verdict and
the admission of evidence regarding oral agreements or course of conduct to
change contract terms.  We reverse and render.

 

Background

Harbour
Lights was developing a property on Cedar Creek Lake.  The development required
sewer and water lines, and Harbour Lights requested that Double C submit a bid
on the work.  Double C informed Harbour Lights that two methods exist for the
installation of sewer and water lines: (1) open cut and lay and (2) directional
drilling.  So long as problems do not arise with the open cut and lay method,
the directional drilling method is more costly.  But, when working around
water, the open cut and lay method is more prone to problems, and can become
even more costly than the directional drilling method.

Harbour
Lights contracted with Double C for the installation of the sewer and water lines
and chose to have Double C use the open cut and lay method.  Double C agreed to
install the sewer and water lines for $143,675.50.  However, the parties
further agreed that Double C could charge additional amounts for additional
work requirements caused by complications with completing the project.

Pursuant
to the contract, Double C’s work was to be “substantially completed on or before
Sixty (60) working days following [Double C’s] receipt of written Notice to
Proceed.”  Although the contract was signed in April, Double C did not begin
work on the project until July.  When laying the sewer lines, Double C
encountered problems, including some with water from the lake.  Ultimately, Double
C failed to complete the work timely because of several factors:  the increased
difficulty of the open cut and lay method near water, mistakes made by the
engineers in charge of the project, the location of the water main, and delay
in completion of the lift station for the development. 

On
December 3, 2007, with ninety percent of the work complete and three more weeks
of work to go, Harbour Lights terminated its contract with Double C.  At that
time, Harbour Lights had paid Double C more than $162,000.00.  On December 10,
2007, Double C terminated the contract because of Harbour Lights’ failure to
pay.  Double C requested that Harbour Lights make final payment for Double C’s
work in the amount of $31,005.30.  Harbour Lights refused to pay the money
Double C claimed it was owed.

Harbour
Lights then hired A&M Utility to finish the project.  Harbour Lights paid
A&M $42,000.00, and A&M finished the project in mid-January 2008.

Because
it still had not received payment from Harbour Lights by February 2008, Double
C prepared and filed a mechanic’s and materialman’s lien.  Double C then sued
Harbour Lights for breach of contract, quantum meruit, and foreclosure of its
mechanic’s and materialman’s lien.  Harbour Lights generally denied the
allegations and alleged the affirmative defenses of payment and Double C’s
breach.

The
matter proceeded to trial.  During the trial, Double C abandoned its quantum
meruit claim.  The jury found that Harbour Lights breached the contract, Double
C did not breach the contract, and Double C was damaged in the amount of
$31,005.30.  By agreement, the parties submitted the issue of foreclosure of
the mechanic’s and materialman’s lien to the court.  The court denied the
foreclosure.  This appeal followed.

 

 

Breach of Contract

In
their first cross-issue, Harbour Lights argues that the trial court should have
granted their motion for instructed verdict on their affirmative defense of
material breach by Double C.  Harbour Lights contends that Double C breached
the contract by failing to perform the water and sewer installation in sixty
days as required by the contract.  They argue this was a material breach
because time was of the essence. 

 

Standard of Review

A
court properly instructs a verdict if no probative evidence raises a fact issue
on the material questions in the suit.  Prudential Ins. Co. v. Fin.
Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).  A defendant
establishes a right to a directed verdict when a plaintiff fails to present
evidence raising a fact issue essential to the plaintiff’s right of recovery or
when the plaintiff admits, or the evidence conclusively establishes, a defense
to the plaintiff’s cause of action.  Id.  Thus, an appeal from
the denial of a motion for directed verdict is essentially a legal sufficiency
challenge.  Lochinvar Corp. v. Meyers, 930 S.W.2d 182, 187 (Tex.
App.–Dallas 1996, no pet.).  A directed verdict is warranted when the evidence
is such that no other verdict can be rendered and the moving party is entitled,
as a matter of law, to judgment.  Willet v. Cole, 249 S.W.3d 585,
590 (Tex. App. – Waco 2008, no pet.).

When
the party who had the burden of proof at trial attacks the legal sufficiency of
an adverse finding, that party must show that the evidence establishes, as a
matter of law, all vital facts in support of the issue.  Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 241 (Tex. 2001).  We  credit favorable evidence
if a reasonable factfinder could and disregard evidence contrary to the finding
unless a reasonable factfinder could not.  City of Keller v. Wilson,
168 S.W.3d 802, 807 (Tex. 2005).  

 

Applicable Law

            An
appellate court reviews a trial court’s construction of an unambiguous contract
de novo.  MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995
S.W.2d 647, 650 (Tex. 1999).  In performing a de novo review, we exercise our
own judgment and redetermine each legal issue.  Quick v. City of Austin,
7 S.W.3d 109, 116 (Tex. 1999).  When construing a written contract, courts
ascertain the intent of the parties as expressed in the instrument.  Nat’l
Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d
517, 520 (Tex. 1995).  Courts examine and consider the entire writing in an
effort to harmonize and give effect to all the provisions of the contract so
that none will be rendered meaningless.  Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983).  If there is no ambiguity in the instrument, its
construction is a question of law for the court.  See id. 
Interpretation of a contract becomes a fact issue, to be resolved by extrinsic
evidence, only when application of pertinent rules of construction leaves a
genuine uncertainty as to which of two meanings is proper.  Id.
at 393-94.

            Failure
to perform in a timely manner constitutes a material breach where time is of
the essence in the contract. TrueStar Petroleum Corp. v. Eagle Oil &
Gas Co., 323 S.W.3d 316, 319 (Tex. App. – Dallas 2010, no pet.).  Timely
performance is a material term if the contract expressly makes time of the
essence or if something in the nature and purpose of the contract and the
surrounding circumstances make it apparent that parties intended that time be
of the essence.  Id.  Thus, when parties intend that time is of
the essence to a contract, a party is excused from further performance when the
other party fails to timely perform its obligations under the contract.  Mustang
Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 196 (Tex. 2004). 

 

Terms of the Contract

            Harbour
Lights and Double C contracted that time was of the essence for the work being
completed by Double C.  Double C agreed to substantially complete the work on
or before sixty working days.  Harbour Lights was to provide a written Notice
to Proceed to begin the running of the sixty day deadline.  However, the
parties further agreed that “in no event will the Contract Times commence to
run later than the sixtieth day after the day of Bid opening or the thirtieth
day after the Effective Date of the Agreement, whichever is earlier.”  “Effective
Date of the Agreement” is defined in the contract as the date indicated in the
agreement on which it becomes effective, but if no such date is indicated, it
means the date on which the agreement is signed and delivered by the last of
the two parties to sign and deliver.

            The
parties further contracted that the contract times could be changed only by a change
order, and any claim for an adjustment of the contract times required written
notice.  Double C could request a change to the contract times based on delays
beyond the control of Double C or delays caused by the owner, engineer, other
contractors, or utility owners.

 

Timeline and Application

            According
to the testimony of the parties, Harbour Lights and Double C signed the
contract on April 2, 2007.  However, the contract states that it is dated May
10, 2007.  Thus, pursuant to the terms of the contract, Double C’s sixty working
day time period began to run on June 9, 2007, which is thirty days after May
10, 2007, the effective date of the contract.  Reading “working day” to mean only Monday through
Friday, the sixty day time period ended on August 31, 2007.

            Accordingly,
on December 3, 2007, when Harbour Lights terminated the contract, Double C was already
in breach for failure to timely perform.[1]   See TrueStar Petroleum
Corp., 323 S.W.3d at 319.  Double C clearly had worked more than sixty
days on the project but had failed to substantially complete the project.  At
trial, Double C estimated that it still had three more weeks of work to
substantially complete the project.  However, Double C failed to present any
writing extending the deadline for it to complete the work.  Thus, Harbour
Lights proved as a matter of law that Double C was in material breach of the
contract when Harbour Lights terminated the contract.  See id.

            Double
C argues that the record is silent as to when, if ever, Harbour Lights provided
a written Notice to Proceed.  We agree, but under the terms of the contract,
this fact is of no consequence.  If Harbour Lights failed to provide a written
Notice to Proceed, the deadline began to run thirty days after the effective
date of the agreement.  Further, Double C argues that Harbour Lights never told
Double C that the work needed to be completed within sixty working days. 
Whether Harbour Lights verbally relayed this information to Double C is
immaterial because the contract specifically included the sixty working day
deadline.

            Double
C also argues that it presented evidence demonstrating that it was entitled to
an extension of the time deadline under the contract.  Again, we agree, but
under the terms of the contract, Double C was required to make any request for
an extension of time in writing.  Double C presented no evidence of any such
writing.  Further, even if Double C had made a written request for an extension
of time, the evidence it presented at trial does not show that Double C would
have been entitled to extend the deadline to December 3, 2007, the date that
Harbour Lights finally terminated the contract.

            Finally,
Double C argues that the parties’ course of conduct indicated they had extended
Double C’s time to complete the work beyond the deadline imposed by the
contract.  Double C contends that evidence of the modification is not barred in
this case because the trial court instructed the jury, without objection by
Harbour Lights, that “[f]ailure to comply with a term in an agreement is
excused if the parties agreed that a new term would take its place.  A new term
may be implied by a course of dealing between the parties.”  

Legal
sufficiency is measured against the trial court’s charge when given without
objection, even when the charge’s statement of law is incorrect.  See Wal
Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 715 (Tex. 2001).  Assuming
the above quoted portion of the charge was incorrect, a jury instruction does
not supplant the evidence.  The record shows that Double C remained at work,
and Harbour Lights continued to pay Double C, for several months after the
deadline expired.  Double C received its last payment from Harbour Lights on
November 29, 2007.  And, as previously stated, Harbour Lights did not terminate
the contract until December 3, 2007.  However, there was no evidence that
Harbour Lights and Double C agreed to a new deadline.  Instead, the evidence
shows that Harbour Lights wanted the sewer and water line project completed as
soon as possible.  And the evidence shows that Harbour Lights stopped paying Double
C in November and terminated its contract with Double C in December.  These two
factors militate against any modification of the contract.  Thus, even considering
the legal sufficiency of the evidence in light of the trial court’s charge, the
evidence is legally sufficient to support a finding that Double C committed a
material breach of the contract prior to Harbour Lights’ refusal to pay.

            Harbour
Lights proved as a matter of law that Double C was in breach of the contract
when Harbour Lights terminated the contract on December 3, 2007.  See TrueStar
Petroleum Corp., 323 S.W.3d at 319.  Consequently, Harbour Lights was
entitled to a directed verdict, and the trial court erred in ruling to the
contrary.  See Prudential Ins. Co., 29 S.W.3d at 77.  We sustain
Harbour Lights’ first cross-issue.  Because Harbour Lights’ first cross-issue
is dispositive, we need not reach its second cross-issue or Double C’s issue.  See
Tex. R. App. P. 47.1.

 

Disposition

            Having
sustained Harbour Lights’ first cross-issue and determined that it is
dispositive, we reverse the judgment of the trial court and render
judgment that Double C take nothing from Harbour Lights.

                                                                                    Brian Hoyle

                                                                                           
Justice

 

 

Opinion delivered July 29, 2011.

Panel
consisted of Worthen, C.J., Griffith, J. and Hoyle, J.

 

 

(PUBLISH)









[1] Double C presented testimony
that it did not begin work on the project until the first of July.  But by the
contract’s terms, Double C’s sixty day time period began on June 9.  We note
that even if the sixty days began running on July 25, 2007, the date that
Double C sent its first invoice to Harbour Lights, the deadline for completion
of construction expired on October 16, 2007.