# NO. 12-10-00342-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DOUBLE C CONTRACTING, INC.,*<br>*APPELLANT/CROSS-APPELLEE,* | § | *APPEAL FROM THE 392ND* |
| *V.* | | |
| | § | *JUDICIAL DISTRICT COURT* |
| *GBC HARBOUR LIGHTS MARINA,*<br>*LTD. and HARBOUR LIGHTS*<br>*VILLAS PHASE ONE, LTD.,* | | |
| *APPELLEES/CROSS-APPELLANTS* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Double C Contracting, Inc. sued GBC Harbour Lights Marina, Ltd., and Harbour Lights Villas Phase One, Ltd., (collectively Harbour Lights) for breach of contract and foreclosure of a mechanic's and materialman's lien. The jury found that Harbour Lights breached the contract, and the trial court rendered judgment against Harbour Lights for $31,005.30, interest, and attorney's fees. The trial court denied Double C's request to foreclose its mechanic's and materialman's lien. Double C raises one issue challenging the trial court's denial of the foreclosure of its lien. In two cross-issues, Harbour Lights challenges the trial court's denial of their motion for instructed verdict and the admission of evidence regarding oral agreements or course of conduct to change contract terms. We reverse and render.

### BACKGROUND

Harbour Lights was developing a property on Cedar Creek Lake. The development required sewer and water lines, and Harbour Lights requested that Double C submit a bid on the work. Double C informed Harbour Lights that two methods exist for the installation of sewer and water lines: (1) open cut and lay and (2) directional drilling. So long as problems do not arise with the open cut and lay method, the directional drilling method is more costly. But, when working around water, the open cut and lay method is more prone to problems, and can become even more costly than the directional drilling method.

Harbour Lights contracted with Double C for the installation of the sewer and water lines and chose to have Double C use the open cut and lay method. Double C agreed to install the sewer and water lines for $143,675.50. However, the parties further agreed that Double C could charge additional amounts for additional work requirements caused by complications with completing the project.

Pursuant to the contract, Double C's work was to be "substantially completed on or before Sixty (60) working days following [Double C's] receipt of written Notice to Proceed." Although the contract was signed in April, Double C did not begin work on the project until July. When laying the sewer lines, Double C encountered problems, including some with water from the lake. Ultimately, Double C failed to complete the work timely because of several factors: the increased difficulty of the open cut and lay method near water, mistakes made by the engineers in charge of the project, the location of the water main, and delay in completion of the lift station for the development.

On December 3, 2007, with ninety percent of the work complete and three more weeks of work to go, Harbour Lights terminated its contract with Double C. At that time, Harbour Lights had paid Double C more than $162,000.00. On December 10, 2007, Double C terminated the contract because of Harbour Lights' failure to pay. Double C requested that Harbour Lights make final payment for Double C's work in the amount of $31,005.30. Harbour Lights refused to pay the money Double C claimed it was owed.

Harbour Lights then hired A&M Utility to finish the project. Harbour Lights paid A&M $42,000.00, and A&M finished the project in mid-January 2008.

Because it still had not received payment from Harbour Lights by February 2008, Double C prepared and filed a mechanic's and materialman's lien. Double C then sued Harbour Lights for breach of contract, quantum meruit, and foreclosure of its mechanic's and materialman's lien. Harbour Lights generally denied the allegations and alleged the affirmative defenses of payment and Double C's breach.

The matter proceeded to trial. During the trial, Double C abandoned its quantum meruit claim. The jury found that Harbour Lights breached the contract, Double C did not breach the contract, and Double C was damaged in the amount of $31,005.30. By agreement, the parties submitted the issue of foreclosure of the mechanic's and materialman's lien to the court. The court denied the foreclosure. This appeal followed.

## BREACH OF CONTRACT

In their first cross-issue, Harbour Lights argues that the trial court should have granted their motion for instructed verdict on their affirmative defense of material breach by Double C. Harbour Lights contends that Double C breached the contract by failing to perform the water and sewer installation in sixty days as required by the contract. They argue this was a material breach because time was of the essence.

## STANDARD OF REVIEW

A court properly instructs a verdict if no probative evidence raises a fact issue on the material questions in the suit. *Prudential Ins. Co. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). A defendant establishes a right to a directed verdict when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery or when the plaintiff admits, or the evidence conclusively establishes, a defense to the plaintiff's cause of action. *Id*. Thus, an appeal from the denial of a motion for directed verdict is essentially a legal sufficiency challenge. *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 187 (Tex. App.–Dallas 1996, no pet.). A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment. *Willet v. Cole*, 249 S.W.3d 585, 590 (Tex. App. – Waco 2008, no pet.).

When the party who had the burden of proof at trial attacks the legal sufficiency of an adverse finding, that party must show that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We credit favorable evidence if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

## APPLICABLE LAW

An appellate court reviews a trial court's construction of an unambiguous contract de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). In performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1999). When construing a written contract, courts ascertain the intent of the parties as expressed in the instrument. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Courts examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If there is no ambiguity in the

instrument, its construction is a question of law for the court. *See id*. Interpretation of a contract becomes a fact issue, to be resolved by extrinsic evidence, only when application of pertinent rules of construction leaves a genuine uncertainty as to which of two meanings is proper. *Id*. at 393-94.

Failure to perform in a timely manner constitutes a material breach where time is of the essence in the contract. *TrueStar Petroleum Corp. v. Eagle Oil & Gas Co.*, 323 S.W.3d 316, 319 (Tex. App. – Dallas 2010, no pet.). Timely performance is a material term if the contract expressly makes time of the essence or if something in the nature and purpose of the contract and the surrounding circumstances make it apparent that parties intended that time be of the essence. *Id*. Thus, when parties intend that time is of the essence to a contract, a party is excused from further performance when the other party fails to timely perform its obligations under the contract. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004).

## TERMS OF THE CONTRACT

Harbour Lights and Double C contracted that time was of the essence for the work being completed by Double C. Double C agreed to substantially complete the work on or before sixty working days. Harbour Lights was to provide a written Notice to Proceed to begin the running of the sixty day deadline. However, the parties further agreed that "in no event will the Contract Times commence to run later than the sixtieth day after the day of Bid opening or the thirtieth day after the Effective Date of the Agreement, whichever is earlier." "Effective Date of the Agreement" is defined in the contract as the date indicated in the agreement on which it becomes effective, but if no such date is indicated, it means the date on which the agreement is signed and delivered by the last of the two parties to sign and deliver.

The parties further contracted that the contract times could be changed only by a change order, and any claim for an adjustment of the contract times required written notice. Double C could request a change to the contract times based on delays beyond the control of Double C or delays caused by the owner, engineer, other contractors, or utility owners.

## TIMELINE AND APPLICATION

According to the testimony of the parties, Harbour Lights and Double C signed the contract on April 2, 2007. However, the contract states that it is dated May 10, 2007. Thus, pursuant to the terms of the contract, Double C's sixty working day time period began to run on June 9, 2007, which is thirty

4

days after May 10, 2007, the effective date of the contract. Reading "working day" to mean only Monday through Friday, the sixty day time period ended on August 31, 2007.

Accordingly, on December 3, 2007, when Harbour Lights terminated the contract, Double C was already in breach for failure to timely perform.[1]  *See **TrueStar Petroleum Corp.***, 323 S.W.3d at 319.  Double C clearly had worked more than sixty days on the project but had failed to substantially complete the project.  At trial, Double C estimated that it still had three more weeks of work to substantially complete the project.  However, Double C failed to present any writing extending the deadline for it to complete the work.  Thus, Harbour Lights proved as a matter of law that Double C was in material breach of the contract when Harbour Lights terminated the contract.  *See **id***.

Double C argues that the record is silent as to when, if ever, Harbour Lights provided a written Notice to Proceed.  We agree, but under the terms of the contract, this fact is of no consequence.  If Harbour Lights failed to provide a written Notice to Proceed, the deadline began to run thirty days after the effective date of the agreement.  Further, Double C argues that Harbour Lights never told Double C that the work needed to be completed within sixty working days.  Whether Harbour Lights verbally relayed this information to Double C is immaterial because the contract specifically included the sixty working day deadline.

Double C also argues that it presented evidence demonstrating that it was entitled to an extension of the time deadline under the contract.  Again, we agree, but under the terms of the contract, Double C was required to make any request for an extension of time in writing.  Double C presented no evidence of any such writing.  Further, even if Double C had made a written request for an extension of time, the evidence it presented at trial does not show that Double C would have been entitled to extend the deadline to December 3, 2007, the date that Harbour Lights finally terminated the contract.

Finally, Double C argues that the parties' course of conduct indicated they had extended Double C's time to complete the work beyond the deadline imposed by the contract.  Double C contends that evidence of the modification is not barred in this case because the trial court instructed the jury, without objection by Harbour Lights, that "[f]ailure to comply with a term in an agreement is excused if the parties agreed that a new term would take its place.  A new term may be implied by a course of dealing between the parties."

---

[1] Double C presented testimony that it did not begin work on the project until the first of July.  But by the contract's terms, Double C's sixty day time period began on June 9.  We note that even if the sixty days began running on July 25, 2007, the date that Double C sent its first invoice to Harbour Lights, the deadline for completion of construction expired on October 16, 2007.

5

Legal sufficiency is measured against the trial court's charge when given without objection, even when the charge's statement of law is incorrect. *See **Wal Mart Stores, Inc. v. Sturges***, 52 S.W.3d 711, 715 (Tex. 2001). Assuming the above quoted portion of the charge was incorrect, a jury instruction does not supplant the evidence. The record shows that Double C remained at work, and Harbour Lights continued to pay Double C, for several months after the deadline expired. Double C received its last payment from Harbour Lights on November 29, 2007. And, as previously stated, Harbour Lights did not terminate the contract until December 3, 2007. However, there was no evidence that Harbour Lights and Double C agreed to a new deadline. Instead, the evidence shows that Harbour Lights wanted the sewer and water line project completed as soon as possible. And the evidence shows that Harbour Lights stopped paying Double C in November and terminated its contract with Double C in December. These two factors militate against any modification of the contract. Thus, even considering the legal sufficiency of the evidence in light of the trial court's charge, the evidence is legally sufficient to support a finding that Double C committed a material breach of the contract prior to Harbour Lights' refusal to pay.

Harbour Lights proved as a matter of law that Double C was in breach of the contract when Harbour Lights terminated the contract on December 3, 2007. *See **TrueStar Petroleum Corp.***, 323 S.W.3d at 319. Consequently, Harbour Lights was entitled to a directed verdict, and the trial court erred in ruling to the contrary. *See **Prudential Ins. Co.***, 29 S.W.3d at 77. We sustain Harbour Lights' first cross-issue. Because Harbour Lights' first cross-issue is dispositive, we need not reach its second cross-issue or Double C's issue. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having sustained Harbour Lights' first cross-issue and determined that it is dispositive, we ***reverse*** the judgment of the trial court and ***render*** judgment that Double C take nothing from Harbour Lights.

### BRIAN HOYLE
Justice

Opinion delivered July 29, 2011.
*Panel consisted of Worthen, C.J., Griffith, J. and Hoyle, J.*

(PUBLISH)

6